UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABA D. CZEKUS,<br><br>        Petitioner,<br><br>    v.<br><br>W. KNIPP, Warden,<br><br>        Respondent.<br>_____/ | No. C-13-2928 EMC (pr)<br><br>**ORDER DENYING MOTION TO DISMISS** |

## I.    INTRODUCTION

Aba D. Czekus filed this *pro se* action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent has moved to dismiss the petition as untimely. Mr. Czekus has filed an opposition to the motion. For the reasons discussed below, the Court denies the motion to dismiss.

## II.    BACKGROUND

Pursuant to a plea bargain, Mr. Czekus pled guilty to and was convicted in Santa Clara County Superior Court of aggravated sexual assault of a child and committing a lewd and lascivious act upon a child under age 14. *See* Cal. Penal Code §§ 269, 288(b)(1). He was sentenced on December 15, 2009 to 32 years in state prison. No appeal was taken.

Mr. Czekus, represented by counsel, filed several state habeas petitions, the first of which was filed on April 29, 2011, and the last of which was denied on July 18, 2012. Specifically, his habeas petition in Santa Clara County Superior Court was filed on April 29, 2011, and denied on August 12, 2011; his habeas petition in the California Court of Appeal was filed on October 18,

2011, and denied on November 2, 2011; and his habeas petition in the California Supreme Court was filed on December 9, 2011, and denied on July 18, 2012.

Mr. Czekus filed his federal habeas petition on June 25, 2013. He does not receive the benefit of the prisoner mailbox rule, which deems most documents filed when the prisoner gives them to prison officials to mail to the court, because the proof of service shows that the petition was mailed to the court by someone outside prison. *See Stillman v. LaMarque*, 319 F.3d 1199, 1201 (9th Cir. 2003).

A.  Attorney Jamie Harley's Representation

Resolution of the motion to dismiss turns on whether Mr. Czekus is entitled to equitable tolling based on the acts and omissions of the attorney retained to represent him.

A written attorney-client agreement dated May 4, 2010 was entered into between Aba Czekus as the "client" and Harley Defense Associates as the "attorney." Docket # 10 at 45. Mr. Czekus' wife, Luisa Czekus, signed on behalf of the "client," and J. Harley signed on behalf of the "attorney." *Id.* at 48.[1] The written agreement explicitly stated that it covered only state court representation and excluded federal court representation. *Id.* at 45. The contract also provided that "any further litigation in the Federal Court will be conditioned upon the payment of additional fees in the amount of five thousand dollars." *Id.*

The next day, May 5, 2010, Ms. Harley sent to Mrs. Czekus a generic new client letter "to orient [the client] to what will be happening over the course of the next several months." *Id.* at 49. In that letter, Ms. Harley explained that her office worked as a team, that the office had three attorneys (her, Ted Stalcup and Chris Dobbins) who could handle various aspects of the case, and that Mr. Stalcup was a research attorney and handled "most of the sophisticated legal arguments in court." *Id.* at 49-50. Ms. Harley wrote: "I am generally in charge of the defense plan in every case in this office. I review all the documents, and am instrumental in crafting our operating theory of the case." *Id.* at 49.

---

[1] Most of the contacts with Ms. Harley's office were made by Mrs. Czekus, whom Mr. Czekus had authorized to be included in the attorney-client relationship. Docket # 10 at 19 and 21.

2

1   At the time she became Mr. Czekus' attorney, Ms. Harley was in serious trouble with the
2 California State Bar.  On May 10, 2010, the Review Department of the State Bar Court filed an
3 opinion in an existing disciplinary case.  That opinion found Ms. Harley "culpable of nine counts of
4 misconduct in six client matters," found "that her misconduct primarily involved mismanagement of
5 her practice, not dishonesty or moral turpitude," and recommended discipline of "a six-month actual
6 suspension, subject to a two-year stayed suspension and two years of probation."  *In the Matter of*
7 *Jamie Leigh Harley*, State Bar Court Nos. 05-O-03395, et al., Order on Review filed May 10, 2010.[2]

8   At the time she became Mr. Czekus' attorney, Ms. Harley (a/k/a Jamie Harmon) was under
9 indictment for money laundering.  Ms. Harley's criminal trial was held in July 2010 and she was
10 convicted of five counts of money laundering in *United States v. Harmon*, N. D. Cal. Case No. CR
11 08-938 LHK.  (Ms. Harley is out of custody on a signature bond and is scheduled to be sentenced on
12 November 19, 2014, according to Docket # 178 and # 390 in that criminal case.)

13   As a result of her conviction on the money-laundering charges, Ms. Harley was suspended
14 from the practice of law effective September 10, 2010 on an interim basis pending final disposition
15 of the proceedings in a new State Bar disciplinary matter opened upon the occurrence of the criminal
16 conviction.  *In the Matter of Jamie Leigh Harley*, State Bar Court No. 09-C-10076, order filed Aug.
17 20, 2010.[3]  The interim suspension order required Ms. Harley to "comply with rule 9.20, California
18 Rules of Court, and perform the acts specified in subdivisions (a) and (c) of that rule within 30 and
19 40 days, respectively, after the effective date of this suspension."  *Id.*  The duties under California
20 Rule of Court 9.20(a) included a duty to notify the client of the suspension and disqualification to
21 act as an attorney, a duty to return papers and property to clients, and a duty to refund unearned fees.

///
///
///
///

---

[2] The decision is available at http://members.calbar.ca.gov/courtDovs/05-O-03395-2.pdf.

[3] The decision is available at http://members.calbar.ca.gov/courtDocs/09-C-10076-1.pdf.

1    Ms. Harley resigned from the California State Bar with charges pending against her on July
2 31, 2013. More charges had been filed against her by that time, as mentioned in the State Bar
3 Court's March 4, 2014 order recommending disbarment.[4]

4    Mrs. Czekus knew by May 7, 2010 (or in any event no later than July 7, 2010) that Ms.
5 Harley was under indictment and was scheduled for trial in July 2010. *See* Docket # 10 at 10-11, 14.
6 Mrs. Czekus learned of the trial outcome in late Summer 2010. There is no evidence as to when Mr.
7 Czekus or Mrs. Czekus learned that Ms. Harley had been suspended from the practice of law.

B.    Efforts To Get A State Habeas Petition Filed

   As mentioned above, the attorney-client agreement provided for Harley Defense Associates to pursue "extraordinary writs" in the state courts. Docket # 10 at 45.

   Numerous emails from Mrs. Czekus and a couple of handwritten letters from Mr. Czekus show that they kept in contact with Harley Defense Associates and continually pressed the attorney to file a state court habeas petition. By October 2010, Mr. and Mrs. Czekus had become anxious about the fact that a state petition had not yet been filed and they had not even seen a draft of it. The emails presented with the opposition to the motion to dismiss show a recurring pattern of increasingly anxious client inquiries about the progress of the case, followed by assurances by Ms. Harley or someone else from her office that the petition was being worked on, and followed by Mr. and Mrs. Czekus feeling reassured. *See* Docket # 10 at 18-20 (October 2010 emails from Mrs. Czekus); *id.* at 21 (November 2010 handwritten note from Mr. Czekus to Mr. Stalcup); *id.* at 22-25 (December 2010 emails from Mrs. Czekus and note from Mr. Czekus to Ms. Harley). In early December 2010, Ms. Harley wrote to Mrs. Czekus that the brief was "basically done" but needed some minor checking. *Id.* at 22. The client sent more inquiring emails, and the attorney's staff responded that there was an office move occurring. *Id.* at 24.

   Ms. Harley's office eventually sent a draft to Mrs. Czekus sometime on or before January 18, 2011. *See id.* at 28 (Mrs. Czekus' January 18, 2011 email that she had received a draft, had a few corrections and would contact Ms. Harley's office in a few days). The clients and attorneys

---

[4] The decision is available at http://members.calbar.ca.gov/courtDocs/08-O-11447-1.pdf.

4

1    apparently tinkered with changes in the petition and declarations over the next few months. On
2    March 13, 2011, Mrs. Czekus emailed Ms. Harley's office to say that, pursuant to her conversation
3    with Ms. Harley on March 10 during which Ms. Harley explained the writ procedure, she (Mrs.
4    Czekus) would mail corrections to her declaration and then request a revised declaration to sign.
5    *Id.* at 29, 30. Mrs. Czekus wrote on March 13 that her husband had not received his declaration yet.
6    *Id.* at 30. The habeas petition was filed in the Santa Clara County Superior Court on April 29, 2011.
7    The petition was rejected by the state superior court, appellate court, and supreme court.

8          On July 19, 2012, the day after the California Supreme Court denied review, Mr. Stalcup
9    sent a letter to Mrs. Czekus stating that the California Supreme Court denied the petition and that
10   there was no other forum left. "We have no other forum available to us now. Federal courts will
11   only consider cases filed within a year sentencing in the original state case." *Id.* at 40 (error in
12   source). Mrs. Czekus' handwritten questions for Mr. Stalcup dated July 23, 2012 indicated that they
13   had not been told that they had to file in federal court within one year of the sentencing. *Id.* at 37.
14   Her notes indicate that Mr. Stalcup responded that the one-year deadline started at the sentencing
15   date because an appeal had not been filed. *Id.*

16         The petitions for writ of habeas corpus in the California Court of Appeal and the California
17   Supreme Court listed Mr. Stalcup of "Bay Area Defense Associates" as the attorney of record.[5]

18         Ms. Harley's email address changed from "@harleydefense.com" to "@badassociates.com"
19   in about December 2010. *Compare* Docket # 10 at 16 *with id.* at 22. Mr. Stalcup's email address
20   also made the same change. *Compare* Docket # 10 at 17 *with id.* at 40.

### III. DISCUSSION

22         Petitions filed by prisoners challenging non-capital state convictions or sentences must be
23   filed within one year of the latest of the date on which: (1) the judgment became final after the
24   conclusion of direct review or the time has passed for seeking direct review; (2) an impediment to
25   filing an application created by unconstitutional state action was removed, if such action prevented

---

[5] Mr. Stalcup was not at that time subject to any disciplinary proceeding by the California State Bar. Mr. Stalcup and Mr. Dobbins (who was the third attorney at Harley Defense Associates) were put on probation by the California State Bar in May 2014 for an unrelated 2011 incident. (*See* decision available at http://members.calbar.ca.gov/courtDocs/11-O-1477-3.pdf).

petitioner from filing; (3) the constitutional right asserted was recognized by the Supreme Court, if the right was newly recognized by the Supreme Court and made retroactive to cases on collateral review; or (4) the factual predicate of the claim could have been discovered through the exercise of due diligence.  28 U.S.C. § 2244(d)(1).

Here, the judgment became final and the limitations period began on February 13, 2010, sixty days after Mr. Czekus was sentenced on December 15, 2009.  *See* Cal. Rule of Court 8.104(a); *Lewis v. Mitchell*, 173 F. Supp. 2d 1057, 1060 (C.D. Cal. 2001) (unappealed California conviction became final 60 days after the superior court sentenced petitioner).  The presumptive deadline for Mr. Czekus to file his federal petition was February 13, 2011.  He missed that deadline by many months, so unless he qualifies for substantial tolling, the petition is untimely.

The one-year limitations period can be equitably tolled because § 2244(d) is not jurisdictional.  *Holland v. Florida*, 560 U.S. 631, 645 (2010).  "'[A] litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.'"  *Id.* at 655 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).  The petitioner bears the burden of showing that equitable tolling should apply to him.  *See Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002).

Mere negligence by an attorney does not amount to an extraordinary circumstance warranting equitable tolling of the limitations period.  *See Holland*, 560 U.S. at 652 ("a 'garden variety claim' of attorney negligence" does not warrant equitable tolling of habeas statute of limitations period).  Ordinarily, a petitioner is "bound by his attorney's negligence, because the attorney and the client have an agency relationship under which the principal is bound by the actions of the agent."  *Towery v. Ryan*, 673 F.3d 933, 941 (9th Cir. 2012) (citing *Maples v. Thomas*, 132 S. Ct. 912, 927 (2012) (using agency principles)). An attorney's miscalculation of deadlines relating to the filing of a habeas petition by an attorney is considered negligence that is not an "extraordinary circumstance" warranting equitable tolling.  *See Randle v. Crawford*, 604 F.3d 1047, 1057-58 (9th Cir. 2010a0 (trial counsel's failure to perfect a timely appeal, post-conviction counsel's incorrect advice as to filing deadline for federal petition and two-month delay in providing client files did not warrant equitable tolling); *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir. 2001) (counsel's

6

miscalculation of deadline and unspecified negligence that caused federal petition to be filed 78 days late was not an extraordinary circumstance warranting equitable tolling); *Miranda*, 292 F.3d at 1068 (appointed attorney's miscalculation of deadline was not an extraordinary circumstance); *cf. Velasquez v. Kirkland*, 639 F.3d 964 (9th Cir. 2011) (late federal petition caused by attorney's misunderstanding of how the statutory tolling provisions worked did not warrant equitable tolling). When, however, counsel's errors are greater than or different from a simple miscalculation of the deadline, extraordinary circumstances may be found.

Counsel's professional misconduct, including attorney abandonment, can "amount to egregious behavior and create an extraordinary circumstance that warrants equitable tolling." *Holland*, 560 U.S. at 651; *see also id.* at 644, 651 (rejecting Eleventh Circuit's rule that petitioner must show lawyer misconduct *plus* bad faith, dishonesty, divided loyalty, mental impairment by lawyer to warrant equitable tolling); *see also Maples v. Thomas*, 132 S. Ct. 912, 922-27 (2012) (attorney abandonment can be "cause" that will excuse procedural default); *id.* at 918-20 and 928 (procedural default excused because petitioner's two lawyers left the big firm at which they were employed and took employment positions that disabled them from representing the petitioner, failed to tell the petitioner of that change of employment, failed to inform the court, and get a new attorney for the petitioner – the combined effect of which was to leave the petitioner unaware that he had no attorney representing him).

For example, in *Spitsyn v. Moore*, 345 F.3d 796, 800-01 (9th Cir. 2003), "extraordinary circumstances" were found to exist based on a convergence of problems with the attorney: the attorney was hired to prepare federal petition nearly a full year before the deadline yet completely failed to file a federal petition; the attorney was unresponsive to inquiries from petitioner and his mother's numerous telephonic and written inquiries; *and* the attorney retained petitioner's files for more than two months beyond expiration of the limitations period even though client had asked for their return. The Ninth Circuit found that the attorney's "conduct was so deficient as to distinguish it from the merely negligence of counsel in *Frye* and *Miranda*," where the attorneys had miscalculated the deadlines. *Spitsyn*, 345 F.3d at 801; *see, e.g., Porter v. Ollison*, 620 F.3d 952, 956-61 (9th Cir. 2010) (attorney's misconduct and eventual resignation after facing disciplinary

7

1 proceedings for running habeas corpus "writ mill" appear to be extraordinary circumstances;
2 remanding on issue of whether petitioner is or is not entitled to equitable tolling because of lack of
3 diligence or because attorney's egregious conduct did not prevent petitioner from filing timely
4 petition); *Doe v. Busby*, 661 F.3d 1001, 1012 (9th Cir. 2011) (extraordinary circumstances existed
5 where the attorney who had been hired more than a year before the AEDPA deadline failed to file a
6 federal petition for four years, then quit without having filed a petition and took months to return
7 client files).

8 Here, several problems converged to put this case into the class of cases where the attorney's professional misconduct is so egregious as to warrant equitable tolling. Although Mr. Stalcup's ignorance of the correct calculation of the statute of limitations deadline would suggest ordinary negligence by an attorney that would bind the client, there was so much more wrong here based on Ms. Harley's continued involvement in the case after her suspension. The record before this Court has no indication that Ms. Harley ever informed the client of her suspension, or ever stopped acting as the lead attorney in this action, notwithstanding her suspension. Ms. Harley's telephone calls and emails to Mrs. Czekus about the case indicate that Ms. Harley continued to act as an attorney, or at least played a large part in the legal representation of Mr. Czekus.[6] Although it is true that Mr. Stalcup is listed as the attorney of record in state court and was one of the people from Ms. Harley's office who communicated with Mr. and Mrs. Czekus, the evidence strongly suggests that Ms. Harley never relinquished control of the representation. Further, Ms. Harley and her office strung the client along, repeatedly trying to assuage the client's growing anxiety by reporting that the petition was being worked on, even though that petition was not filed until almost a year after Ms. Harley's office was retained to file that petition. Ms. Harley's apparent continued involvement in the representation of the client after her suspension from the practice of law, combined with the lengthy delay in filing the state petition and the incorrect understanding of the federal statute of limitations, amount to

---

[6] For example: In a December 2, 2010 email to Mrs. Czekus, Ms. Harley wrote: "I am all finished with my part of the brief, and it is basically done." Docket # 10 at 22. In a January 14, 2011 email to Mrs. Czekus, Ms. Harley wrote" "It is very hard for me to understand people in your position who are always second-guessing their attorneys, and imposing their own will on the situation. To a point it is important to do your homework, to make sure you understand everything to the best of your ability, but beyond that, you just have to let us do our job."

extraordinary circumstances that warrant equitable tolling of the limitations period. In *Maples*, the Supreme Court indicated that agency principles are important to figuring out whether the client should be bound by the attorney's acts; here, the suspension of Ms. Harley terminated her ability to act as an agent for the client. *See* Cal. Bus. & Prof. Code § 6117; *Lovato v. Santa Fe Int'l Corp.*, 151 Cal. App. 3d 549, 553 (Cal. Ct. App. 1984) ("when an attorney is suspended, his authority to act on behalf of his client terminates by operation of law").

Equitable tolling requires not only extraordinary circumstances, but also diligence by the client. The diligence necessary is "reasonable diligence," and not "maximum feasible diligence." *Holland*, 560 U.S. at 653 (internal citation and quotation marks omitted). Mr. and Mrs. Czekus were reasonably diligent in their efforts to get the petition filed. Although their efforts were focused on a state court habeas petition, that was a necessary step before a federal habeas petition could be filed because of the requirement that a petitioner exhaust state court remedies before filing his federal petition. Having not filed a direct appeal, the only way for Mr. Czekus to exhaust state court remedies was to file a habeas petition in the California Supreme Court. The federal court would have rejected any habeas petition filed before the California Supreme Court issued its decision on his habeas petition because a federal petition would have been fully unexhausted at that point. *See Rhines v. Weber*, 544 U.S. 269, 277-78 (2005) (district court can stay a mixed petition to allow the petitioner to exhaust state court remedies for unexhausted claims); *Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006) (district court does not have discretion to stay a petition containing only unexhausted claims).[7] Mr. Czekus' diligence is shown by the hiring of an attorney (less than three months after his conviction became final) to represent him to petition the state courts for a writ of habeas corpus, followed by the repeated contacts from him and his wife in a persistent effort to cause the hired attorney to file a state habeas petition. Mr. Czekus engaged in the reasonable

---

[7] There is a passing mention in the opposition to the motion to dismiss that someone from Ms. Harley's office indicated that something had been filed in federal court to preserve Mr. Czekus' timeliness under the AEDPA. *See* Docket # 10 at 3 (counsel "contended to Petitioner and his wife, that a petition in federal court has been filled (sic) which preserved his AEDPA, verbally"). No evidence supports this assertion. If such a motion was promised but not filed, it was another attorney error. In any event, such a motion would have failed because there was no exhausted claim to present in a protective federal petition.

9

diligence necessary to establish entitlement to equitable tolling for the time from May 4, 2010 (when the attorney was hired) until the time the first state habeas petition was filed (April 29, 2011).

The one-year limitations period is tolled for the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The limitations period was tolled under § 2244(d)(2) during the entire time Mr. Czekus was seeking relief in the state courts. He is entitled to tolling from the filing of the first state habeas petition through the denial of the third state habeas petition because the petitions were filed within a reasonable time after each other, i.e., 67 days between first and second levels, and 7 days between second and third levels. *See Evans v. Chavis*, 546 U.S. 189, 193 (2006); *see, e.g., Stewart v. Cate*, No. 10-55985, slip op. at 13-14 (9th Cir. May 1, 2014) (finding delay of 100 days with no showing of good cause an unreasonable delay); *Banjo v. Ayers*, 614 F.3d 964, 970 (9th Cir. 2010) (finding delay of 146 days between successive petitions not reasonable, so later petition not "timely filed"); *Chaffer v. Prosper*, 592 F.3d 1046, 1048 (unexplained, and hence unjustified, delays of 115 and 101 days between California habeas petitions were not reasonable); *Waldrip v. Hall*, 548 F.3d 729, 735-36 (9th Cir. 2008) (holding delay of at least eight months not "reasonable" and thus not subject to tolling); *Gaston v. Palmer*, 447 F.3d 1165, 1167 (9th Cir. 2006) (finding no "gap tolling" during delays of 10, 15 and 18 months between California habeas petitions). Even if the gaps of 67 days and 7 days between the state petitions were too long to warrant tolling under the *Evans v. Chavis* rule, equitable tolling would apply because of the same attorney problems discussed above. Thus, by the time the California Supreme Court denied the habeas petition, only 80 days of untolled time had passed, and Mr. Czekus had 285 days remaining in his one-year limitations period to get to federal court.

The final question is whether Mr. Czekus is entitled to equitable tolling for the time period after the California Supreme Court denied his habeas petition. Under the unique circumstances of this case, he does. Mr. Stalcup explicitly (and erroneously) advised Mr. Czekus that the deadline already had expired and that there was no forum available to him. Ms. Harley may have written the letter, because her initials are typed under the signature block for Mr. Stalcup on that letter. *See* Docket # 10 at 41. The extraordinary circumstance of Ms. Harley being suspended from the

practice of law yet apparently continuing to take part in the legal representation of Mr. Czekus warrants equitable tolling. The subsequent delay of eleven months before federal habeas petition was filed *pro se* cannot be said to be the result of Mr. Czekus' lack of diligence, as he acted with reasonable diligence under the circumstance wherein a lawyer from his retained lawyer's office unequivocally and erroneously told him that relief was no longer available in federal court because the deadline to petition for such relief had expired long ago. "Reasonable diligence does not require a petitioner to identify the legal errors in his attorney's advice and thereupon fire the attorney because such errors would have been evident to a trained lawyer, nor does it require a petitioner to proceed pro se without an obvious reason for doing so." *Doe v. Busby*, 661 F.3d 1001, 1014 (9th Cir. 2011). Had he been informed that, in fact, his federal petition could still be timely filed within 285 days of the California Supreme Court's denial, he could have responded accordingly. With this equitable tolling, the federal petition was timely filed. In light of this determination, the court need not decide whether Mr. Czekus' vision problem or unspecified mental impairment warrant equitable tolling.

## IV. CONCLUSION

Respondent's motion to dismiss is **DENIED**. (Docket # 7.) The Court now sets the following briefing schedule for the petition for writ of habeas corpus:

1. Respondent must file and serve upon Petitioner, on or before **September 12, 2014**, an answer conforming in all respects to Rule 5 of the Rules Governing Section 2254 Cases, showing cause why a writ of habeas corpus should not be issued. Respondent must file with the answer a copy of all portions of the court proceedings that have been previously transcribed and that are relevant to a determination of the issues presented by the petition.

///

///

///

///

///

///

11

      2.     If Petitioner wishes to respond to the answer, he must do so by filing a traverse with the Court and serving it on Respondent on or before **October 10, 2014**.

      IT IS SO ORDERED.

Dated: July 25, 2014

_____
EDWARD M. CHEN
United States District Judge

12