**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ABA D. CZEKUS,                                   No. C-13-2928 EMC (pr)

        Petitioner,

     v.                                         **ORDER DENYING PETITION FOR**
                                           **WRIT OF HABEAS CORPUS**

W. KNIPP, Warden,

        Respondent.
_____/

## I.    INTRODUCTION

    Aba D. Czekus filed this *pro se* action for a writ of habeas corpus pursuant to 28 U.S.C. §
2254.  The Court earlier denied Respondent's motion to dismiss the petition as untimely.
Respondent has filed an answer to the petition and Mr. Czekus has filed a traverse.  For the reasons
discussed below, the Court **DENIES** the petition.

## II.    BACKGROUND

    Mr. Czekus was charged in a ten-count complaint with two counts of aggravated sexual
assault of a child under 14 and 10 or more years younger than the defendant, *see* Cal. Penal Code §
269, and eight counts of lewd or lascivious acts on a child by force, violence, duress, menace or fear,
*see* Cal. Penal Code §§ 269, 288(b)(1).  *See* Docket # 17-1 at 111.  The probation officer
summarized the offenses in his report to the sentencing court.  "In the present offense, between
December 31, 1999 and December 30, 2005, the defendant molested his granddaughter when she
was between the ages of 3 and 9 years old.  The defendant took nude pictures of the victim, touched
her vagina with his fingers and penis, orally copulated the victim, had the victim touch his penis and

**United States District Court**
For the Northern District of California

1    viewed pornographic movies with the victim." Docket # 17-1 at 31. (The lurid details of Mr.

2    Czekus' long-term sexual abuse of the granddaughter are described in much greater detail in the

3    probation officer's report summarizing the police report, but need not be recounted here.

4    *See* Docket # 17-1 at 25-28.)

5    Pursuant to a plea bargain, Mr. Czekus pled no contest and was convicted in Santa Clara

6    County Superior Court of four counts of lewd or lascivious acts on a child by force, violence, duress,

7    menace or fear, *see* Cal. Penal Code § 288(b)(1). *See* Docket # 17-1 at 111. Mr. Czekus was

8    sentenced on December 15, 2009 to 32 years in state prison. *See id.* at 15-19.

9    No appeal was taken. Mr. Czekus, represented by counsel, filed several state habeas

10   petitions, the first of which was filed on April 29, 2011, and the last of which was denied on July 18,

11   2012.

12   Mr. Czekus then filed his federal petition for writ of habeas corpus. His federal petition

13   alleges two claims. First, he contends that he received ineffective assistance of counsel in that

14   counsel failed to file a motion to suppress Mr. Czekus' confession. Second, he contends that he

15   received ineffective assistance of counsel in connection with his entry of a no-contest plea.

16   Respondent has filed an answer and Mr. Czekus has filed a traverse.

### III.    JURISDICTION AND VENUE

18   This Court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C.

19   § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the petition concerns the

20   conviction and sentence of a person convicted in Santa Clara County, California, which is within

21   this judicial district. 28 U.S.C. §§ 84, 2241(d).

### IV.    STANDARD OF REVIEW

23   This Court may entertain a petition for writ of habeas corpus "in behalf of a person in

24   custody pursuant to the judgment of a State court only on the ground that he is in custody in

25   violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

26   The Antiterrorism And Effective Death Penalty Act of 1996 ("AEDPA") amended § 2254 to

27   impose new restrictions on federal habeas review. A petition may not be granted with respect to any

28   claim that was adjudicated on the merits in state court unless the state court's adjudication of the

claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

      "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000).

      "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id.* at 411.  "A federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was 'objectively unreasonable.'"  *Id.* at 409.

## V.   DISCUSSION

A.   <u>Ineffective Assistance of Counsel - Failure To Move To Suppress</u>

      Mr. Czekus claims that his counsel provided ineffective assistance in that he failed to file a motion to suppress Mr. Czekus' confession.  This claim must be rejected.  Pre-plea constitutional violations cannot be considered in a federal habeas action brought by a petitioner who pled guilty. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *Haring v. Prosise*, 462 U.S. 306, 319-20 (1983) (guilty plea forecloses consideration of pre-plea constitutional deprivations); *see, e.g., United States v. Friedlander*, 217 F. App'x 664 (9th Cir. 2007) (in § 2255 proceedings, "[petitioner] contends that trial counsel was ineffective in her preparation and submission of two suppression motions submitted to the district court, which were denied.  Because [petitioner] pled guilty, his allegations of pre-plea constitutional defects are waived."); *Moran v. Godinez*, 57 F.3d 690, 700 (9th Cir. 1994) (refusing to consider contention that petitioner's attorneys were ineffective because they failed to

**United States District Court**
For the Northern District of California

1  attempt to prevent the use of his confession as pre-plea constitutional violation).  The only

2  challenges left open in federal habeas corpus after a guilty plea are the voluntary and intelligent

3  character of the plea and the nature of the advice of counsel to plead.  *Hill v. Lockhart*, 474 U.S. 52,

4  56-57 (1985).  Pre-plea events would be relevant only as they affected counsel's advice to a

5  petitioner to plead guilty or no-contest.  The Supreme Court explained the rationale for the rule

6  against habeas relief for pre-plea constitutional violations.

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was [inadequate].

12  *Tollett*, 411 U.S. at 267.

13       Mr. Czekus is not entitled to federal habeas relief on his claim that counsel should have

14  moved to suppress his confession before Mr. Czekus entered his no-contest plea.  *Tollett* bars

15  consideration of the claim.

16  B.   Claim That Counsel Provided Ineffective Assistance In Connection With The Plea

17       Mr. Czekus contends that he received ineffective assistance of counsel in connection with his

18  entry of a no-contest plea pursuant to a plea bargain because his attorney did not adequately convey

19  to him that he would receive a 32-year prison sentence with no chance of receiving a lesser sentence

20  in exchange for his plea.  According to Mr. Czekus, although he knew he *could* receive a sentence of

21  up to 32 years, he did not know he definitely *would* receive a sentence of 32 years and nothing less if

22  he pled no contest.

23       1.   State Trial Court Proceedings

24       On or about October 26, 2009, the prosecutor made a plea offer "of 32 years top-bottom" in a

25  telephone call to Mr. Czekus' attorney, Jefferson Parrish.  *See* Docket # 17-1 at 126.  Attorney

26  Parrish discussed the plea offer with Mr. Czekus the next day.  *Id.*  The following day, October 28,

27  2009, was the date set for the preliminary hearing.  Mr. Czekus entered his no-contest plea on

28  October 28, 2009.  His plea was pursuant to a negotiated plea disposition that included a guilty or

4

no-contest plea to four counts and dismissal of the other counts in exchange for a 32-year prison

sentence.

In the colloquy during which Mr. Czekus entered his no-contest plea, the length of his

sentence was mentioned several times:

| | |
|---|---|
| THE COURT: | It's my understanding there is a proposed disposition.  It's my understanding Mr. Czekus will be entering pleas of guilty or no contest.  Is it Counts 3, 4, 5, and 6? |
| [PROSECUTOR:] | Yes. |
| THE COURT: | 3, 4, 5, and 6.  The remaining counts will be submitted for dismissal. There will be a full probation report as required by law.  The agreed disposition is a state prison commitment of *32 years top and bottom*. [¶] And is that the People's proposed disposition? |
| [PROSECUTOR:] | It is, Your Honor.  And I might just add that that's based on *choosing the aggravated term of each of those four counts and running them consecutive up to – for a total of 32 years*, and that's based on the theory that all of these counts in the complaint are separate acts. |
| THE COURT: | And, Mr. Parrish [i.e., defense counsel], that's your understanding of the disposition? |
| MR. PARRISH: | Yes, Your Honor. |
| THE COURT: | And, Mr. Czekus, do you understand that, Sir? |
| THE DEFENDANT: | Yes, Sir. |

Docket # 17-1 at 3-4 (emphasis added).  After determining that Mr. Czekus understood the various

rights he was giving up by entering his plea, the trial court returned to the length of the sentence and

explained the minimum and maximum potential state prison commitment based on the charged

offenses – i.e., if convicted of all crimes, his prison sentence could be as little as 54-years-to-life or

as much as 94-years-to-life.  The court then continued, "A*s a result of this plea you are going to be

sent to prison for the 32 year period.*  That sentence will be followed by a period of parole

supervision."  *Id.* at 7 (emphasis added).  Mr. Czekus agreed that he understood.  *Id.* at 7-8.  At the

end of the colloquy, Mr. Czekus pled no contest to four counts of violations of California Penal

Code section 288(b)(1). Docket # 17-1 at 10.  The court then stated:  "I find the defendant has been

properly advised of the charges against him, the elements of those charges, the possible defense, and

the consequences of his plea.  The court finds the defendant has been fully informed of his

United States District Court

For the Northern District of California

1  constitutional rights; has knowingly, intelligently, freely, and voluntarily waived those rights.  The

2  court finds a factual basis for the pleas and accepts them." *Id.* at 11.

3        On December 15, 2009, two months after entering his no-contest plea, Mr. Czekus was

4  sentenced.  The judge started the sentencing hearing by stating that it was "the tentative intention of

5  the Court to follow the stipulated agreement of the parties, a state *prison commitment of 32 years*."

6  Docket # 17-1 at 16 (emphasis added).  Defense counsel then presented to the court a sentencing

7  memorandum, explaining that the "defendant's wife" "had this done independently, and he would

8  like it attached."  Docket # 17-1 at 17.  The court accepted the document, stating that the

9  memorandum would "go to probation and be a part of the packet that accompanies Mr. Czekus in

10 this matter."  *Id.*  The court then imposed the sentence: "As to each count you'll be committed to the

11 California State Department of Corrections for the upper term of eight years, the sentences are to run

12 consecutive and full term consecutive pursuant to Penal Code section 667.6(d) and the agreement of

13 the parties.  *The total prison term is 32 years*."  *Id.* (emphasis added).  Mr. Czekus expressed no

14 objection to the sentence imposed.  He only spoke to read a statement in which he expressed

15 remorse for his actions and asked for forgiveness.  Docket # 17-1 at 18-19.

16        2.    Mr. Czekus' State Habeas Petition

17        About sixteen months after he was sentenced, Mr. Czekus filed his first state habeas petition

18 attempting to undo his conviction and sentence.  He filed a petition in the Santa Clara County

19 Superior Court alleging that counsel had provided ineffective assistance in that counsel had not

20 adequately informed him that he would be sent to prison for a term of 32 years as a consequence of

21 his plea.  The superior court ordered the respondent to respond to the petition.  After the parties

22 briefed the matter and submitted declarations, the superior court denied the petition, finding that Mr.

23 Czekus had failed to show deficient performance by his counsel and failed to show prejudice.

24        a.    Evidence In State Court

25        Mr. Czekus presented declarations from himself and his wife[1] with his habeas petition in the

26 Santa Clara County Superior Court.

27

28        ────────────────────

     [1] Mrs. Czekus' declaration is not relevant to this ineffective assistance of counsel claim.

6

United States District Court
For the Northern District of California

Mr. Czekus' declaration stated that English was not his first language, "and unless things are explained to [him] thoroughly, and slowly, [he often had] difficulty comprehending conversations and instructions." Docket # 17-1 at 74.[2]  He further declared that his confession to the police upon his arrest had been done at a time when he was feeling unwell due to a long plane flight, fatigue, hunger, and failure to take his medications.  *Id.* at 74-75.  As to the plea bargain, Mr. Czekus' declaration provided few details as to what exactly he had been told by his attorney, Mr. Parrish.

> Mr. Parrish told me that the District Attorney had offered me a deal and that I should take it because if I refused, I would serve life in prison. [¶] I believed that if I accepted the offer that my time in prison could be a lot less than the years that were being discussed.  I never understood that the sentence was fixed and would not be changed by the Judge. [¶] I would never have agreed to accept any deal where I would die in prison as a result of the sentence.  I accepted the deal because I believed that my sentence could be as little as eight years and that I had a chance to present evidence to the Judge that would convince him to give me a sentence I could accept. [¶] It was because I believed that my sentence could be substantially reduced that my wife hired a sentencing consultant.

*Id.* at 75-76.

Respondent presented a declaration and notes from Mr. Parrish, the attorney who represented Mr. Czekus at the time of the entry of the plea.  Mr. Parrish declared:

> After several jail visits and a full discussion of the facts of the case using the police reports and related documents (victim's diary) I attempted to negotiate a plea-bargain with Dan Fehederau, Deputy District Attorney.  I also had office visits with defendant's wife M. Luisa Cezekus [sic] four or fine [sic] times and several calls nearly every day at home and work beginning as early as 6:30 a.m. [¶] The offer came by phone on October 26 of 32 years top-bottom (telephone calls from Fehderau).  I went to Elmwood [jail] on the day before the date set for Preliminary Hearing (10-28-2009) and for approximately one hour discussed with defendant what would be his options on the

---

[2] English may have been Mr. Czekus' second language, but he had been speaking it for about five decades.  His sentencing memorandum casts doubt on Mr. Czekus' assertion of limited English language skills.  Mr. Czekus had left Hungary in 1956, and was in the United States by 1957.  Docket # 17-1 at 84.  He had graduated from the Hungarian equivalent of a high school "and is fluent in both Hungarian and English."  *Id.* at 86.  Mr. Czekus had worked in the airline industry in the United States for about forty years, holding jobs such as a cargo operations agent, a senior account representative, and a cargo handling agent.  *Id.*  "Throughout his career, Mr. Czekus has voluntarily kept up on industry education and certifications."  *Id.*

Handwritten letters written by Mr. Czekus while in prison also undermine any suggestion of limited facility with the English language.  *See* Docket # 10 at 19, 21, 25, and 69.

following day in Court.  (See attached note) (made immediately after that interview and placed in the file.)  I told him I thought going ahead with the Preliminary might be in his interest since there were many discrepancies in the victim's statements to police and her "diary" and what he had told me had really happened. [¶] Defendant was very firm that he did not want a Preliminary because the victim would have to take the stand.  I told him to wait until the next day and we would talk again.  (See attached file note). [¶] The following day I spoke to him in the holding cell and he again insisted on the plea over my advise [sic]. Again he expressed his desire to save the victim from testifying. Immediately afterwards the plea was taken. [¶] After the plea, I was also called by a sentencing consultant whom Defendant's wife had hired without my knowledge.  [¶] I told him it was a done deal and I could not see any use in the report.  He suggested that it could help in his housing level at prison, and I agreed and gave a copy of his report to Judge Shapiro.

Docket # 17-1 at 126-27.  Mr. Parrish's handwritten note attached to his declaration states: "10/27/09 9:30-10:50.  Spoke w/ D re offer 32 yrs.  Cts 1&2 dism.  Told do not urge plea, should wait for better offer.  Advised D.A. does [illegible] another life term re oral cop. after comes out in PX.  Told seems too high & might get better offer after PX, but is risk cld. get worse.  Told him I can't present plea to offer.  D insists does not want V to have to take stand." Docket # 17-1 at 128.  *See also* Docket # 20 at 28 (*Mrs.* Czekus' handwritten note for October 20, 2009: "I told Parrish – make a deal – no trial").

### b.   State Court's Rejection Of Ineffective Assistance Claim

The Santa Clara County Superior Court denied Mr. Czekus' habeas petition in a reasoned decision.  As the last reasoned decision from a state court, the decision from the superior court is the decision to which § 2254(d) applies.[3]  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005).

The Santa Clara County Superior Court rejected Mr. Czekus' argument that he had received ineffective assistance in connection with the entry of the no-contest plea.  Docket # 17-1.  The superior court explained that *Strickland v. Washington*, 466 U.S. 668 (1984), required both deficient performance and resulting prejudice to show a violation of a criminal defendant's Sixth Amendment

---

[3] The California Court of Appeal summarily denied Mr. Czekus' petition for writ of habeas corpus, as did the California Supreme Court.  *See* Docket # 17-1 at 160, 190.

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

1  right to effective assistance of counsel, and determined that Mr. Czekus had failed to establish either

2  prong under *Strickland*.

> Petitioner claims that counsel failed to adequately inform him that he
> would be sent to prison for a term of 32 years as a consequence of his
> plea. As evidence of this, Petitioner sets forth the fact that he
> commissioned a $12,500 "Sentencing Mitigation Report" in hopes of
> reducing the sentence. Petitioner contends he would not have spent
> such a large sum of money had trial counsel helped him to fully
> understand the implications of his plea. Petitioner attributes his
> misunderstanding to trial counsel's failure to adequately advise him of
> the consequences of his plea of guilty. Although this is a compelling
> piece of evidence at first blush, when viewed with Petitioner's
> statements during proceedings that he did understand the duration of
> the sentence and the consequence of his plea, a contrary conclusion is
> reached.
>
> When Petitioner entered a change of plea, the Court referred to
> the sentence as of "a total of 32 years." (TX 10/28/09 3:1.) The Court
> further instructed Petitioner that, if he did not understand any portion of
> the proceeding or questioning, he would be given "the chance to
> discuss the matter further with [trial counsel]." (*Id.* at 3:13-14.) In the
> following line of questioning, Petitioner indicated he had no problem
> talking with trial counsel about his case, that he had enough time to
> discuss with trial counsel fully what the charges were, what the
> possible defenses might be, and that he understood "the consequences .
> . . of his decision to enter pleas of guilty." (*Id.* at 3-4:22-5.)
> Furthermore, at sentencing, the Court once again advised Petitioner
> clearly of his sentence, referring to the duration specifically as "a state
> prison commitment of 32 years." (12/15/09 TX 2:22-23.) At no point
> did the Court refer to a possible reduction of the sentence, nor did
> Petitioner indicate he expected one. Instead, petitioner indicated to the
> court on two separate occasions that he fully understood the
> implications of his plea of guilty. Trial counsel did not act
> unreasonably because Petitioner gave no reason to believe that he did
> not fully understand the terms of his plea and explicitly stated on two
> occasions he fully understood the implications of doing so. Thus, the
> first prong of *Strickland* is not met.

Docket # 17-1 at 154-55 (ellipses in original).

The superior court also found that Mr. Czekus' ineffective assistance claim failed on the

prejudice prong of *Strickland*, 466 U.S. at 694. First, the superior court explained that there was no

evidence that attorney Parrish had not researched the facts or the law, or that he had not talked such

matters over with Mr. Czekus. Counsel had obtained a significant reduction in the potential sentence,

had paid several visits to Mr. Czekus, and had asked Mr. Czekus to think for a day on his decision to

accept the plea offer. Docket # 17-1 at 156. Despite counsel's recommendation to wait to enter a

**United States District Court**
For the Northern District of California

plea until after the preliminary hearing to give counsel a chance to challenge some evidence, and the possibility of a reduction in the proposed term after the preliminary hearing, Mr. Czekus "refused to participate because he did not want his granddaughter to have to testify and thereby 'relive the events.'"  *Id.*  Second, the superior court noted that Mr. Czekus had overlooked the fact that the trial court "may not have reduced his sentence even if [it had] been able to."  *Id.*  Given the already substantial sentence reduction included in the plea offer, a further reduction to a sentence of less than eight years "is something neither trial counsel nor the Court suggested as a possibility at any time," notwithstanding Mr. Czekus' statement that he believed he could receive such a light sentence. *Id.*  Third, the superior court rejected the argument that Mr. Czekus misunderstood his potential sentence based on counsel's alleged statement that the plea arrangement was the only means Mr. Czekus had of avoiding a life sentence.  *Id.* at 157.  "While it is true that, at 71 and in poor health, it is highly unlikely Petitioner will survive the entire sentence, this claim is unavailing because Petitioner knew his own age when he took the plea without any guarantee or even mention of a reduction."  *Id.*  The court also observed that the 32-year determinate term is "not actually a 'life' sentence – regardless of the practical realities."  *Id.*  Taking these factors into account, the superior court concluded: "Petitioner has failed to establish that there is a reasonable possibility that he would have gone to trial had he been advised because he accepted the plea arrangement with knowledge of both his age and health conditions and against trial counsel's advice for a specifically articulated personal reason."  *Id.* at 157-58.

       3.     <u>Analysis of Ineffective Assistance of Counsel Claim</u>

       The Sixth Amendment guarantees not just counsel, but the effective assistance of counsel. *Strickland*, 466 U.S. at 686.  The purpose of the right is to ensure a fair trial, and the benchmark for judging any claim of ineffectiveness is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result."  *See id.*  In order to prove a Sixth Amendment ineffectiveness of counsel claim, a petitioner must establish (1) that counsel's performance fell below an "objective standard of reasonableness," and (2) that he was prejudiced by counsel's deficient performance.  *Id.* at 687-88, 694.  Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong

1   presumption that counsel's conduct falls within the wide range of reasonable professional assistance.

2   *See id.* at 689.

3         A defendant who enters a guilty or no-contest plea on the advice of counsel may generally

4   only attack the voluntary and intelligent character of the plea by showing that the advice he received

5   from counsel was not within the range of competence demanded of attorneys in criminal cases.  *See*

6   *Hill v. Lockhart*, 474 U.S. 52, 56 (1985); *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  The

7   defendant must satisfy the two-part standard of *Strickland*, 466 U.S. 668, 687 (1984), i.e., that

8   counsel's performance was deficient and that the deficient performance prejudiced his defense.  In

9   the context of a guilty or no-contest plea, the defendant establishes prejudice by showing that there is

10  a reasonable probability that, but for counsel's errors, he would not have pled guilty or no contest and

11  would have insisted on going to trial.  *See Hill v. Lockhart*, 474 U.S. at 57-59; *Iaea v. Sunn*, 800 F.2d

12  861, 864-65 (9th Cir. 1986).

13        A "doubly" deferential judicial review is appropriate in analyzing ineffective assistance of

14  counsel claims under § 2254.  *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1410-11 (2011).  The

15  "question is not whether counsel's actions were reasonable.  The question is whether there is any

16  reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Harrington v. Richter*,

17  562 U.S. 86, 105 (2011).

18        The Santa Clara County Superior Court's rejection of Mr. Czekus' ineffective assistance

19  claim was not contrary to or an unreasonable application of clearly established federal law, as set

20  forth by the U.S. Supreme Court.  The superior court correctly identified the controlling Supreme

21  Court cases as *Strickland* and *Hill v. Lockhart*, and reasonably applied those cases to Mr. Czekus'

22  claim.  This is a case in which many of the same facts show both the absence of deficient

23  performance and the lack of prejudice. The superior court's determination that there was no deficient

24  performance because Mr. Czekus gave counsel no reason to believe that he did not fully understand

25  the terms of his plea and actually confirmed in court that he did understand the implications of the

26  plea was a reasonable conclusion.

27        Mr. Czekus' attorney did not recommend that Mr. Czekus take the plea offered.  Attorney

28  Parrish actually recommended going forward with the preliminary hearing rather than accepting the

United States District Court

For the Northern District of California

plea offer because attorney Parrish thought there were some weaknesses in the victim's statements that could be exposed at the preliminary hearing. *See* Docket # 17-1 at 126-27. Counsel thought that a better offer could be obtained after the preliminary hearing. *Id.* at 128. But Mr. Czekus wanted to "save the victim from testifying." *Id.* Counsel recommended that Mr. Czekus think about the plea offer for a day; the next day – when the case was set to have a preliminary hearing – Mr. Czekus accepted the plea.[4]  The superior court reasonably concluded that "counsel urged [Mr. Czekus] not [to] take the proposed plea because he believed the evidence to be presented had 'many discrepancies' that could be brought forth at the preliminary hearing, but [Mr. Czekus] refused to participate for personal reasons," i.e., to avoid his granddaughter having to testify. Docket # 17-1 at 156.

Determining that counsel actually advised against taking the plea does not end the matter because, even when an attorney does not recommend that the client accept a plea offer, he must

_____

[4] As mentioned in Section A, the attorney's alleged failure to file a motion to suppress Mr. Czekus' confession would only matter insofar as it affected the quality of his advice with regard to the plea offer. Because Mr. Czekus' attorney did not recommend accepting the plea offered and instead wanted to proceed with the preliminary hearing, it cannot be said that not filing a motion to suppress affected the quality of his advice with regard to the plea. It should be noted that any motion to suppress, even if successful, would not have significantly changed the plea calculus. Even if his confession was suppressed, the case would have gone forward and his granddaughter would have had to testify, a result Mr. Czekus sought to avoid. Indeed, her testimony, if anything, would have been made even more essential without his confession.

Also, Mr. Czekus has never denied molesting the girl. In fact, he admitted doing so to the person who prepared the sentencing report. (Czekus' explanation was that he had erectile dysfunction and decided to see if fondling a little girl could help solve that problem. *See* Docket # 17-1 at 30.) Even his wife's notes indicate that he only disputed the first two counts (aggravated sexual assault of a child under 14) and not the eight counts of lewd and lascivious acts on a child by force, violence, duress, menace or fear (*see* Docket # 20 at 26, 28); Czekus' plea was to four of the lewd and lascivious counts.

Furthermore, the absence of a motion to suppress had no bearing on whether counsel adequately conveyed that the sentence definitely would be 32 years in prison. *Cf. Premo v. Moore*, 562 U.S. 115 (2011) (Ninth Circuit erred in concluding that counsel engaged in deficient performance by not moving to exclude a confession before advising a client to take a plea bargain). *Premo* does not represent an abandonment of *Tollett's* rule that pre-plea violations cannot support habeas relief. Instead, *Premo* applied *Strickland* to consider whether the state court unreasonably determined that counsel did not engage in deficient performance by advising the client to plead guilty without first moving to suppress a confession. *See id.* at 123. Although *Premo* and Mr. Czekus' cases both involved a motion to suppress that was not made and a plea bargain that was accepted, the similarity ends because, unlike *Premo*, Mr. Czekus' counsel did not recommend that Mr. Czekus accept the plea. Instead, Mr. Czekus' attorney's alleged deficiency was in conveying the term of years to be served; as to that, any possible motion to suppress was irrelevant.

United States District Court
For the Northern District of California

1  competently advise his client so that the client can make an intelligent decision regarding the entry of

2  a plea.  *See Langford v. Day*, 110 F.3d 1380, 1386 (9th Cir. 1996) (despite client's insistence on

3  pleading guilty and seeking the death penalty, inadequate investigation and advice on possible

4  defenses that might have had a bearing on defendant's choice to plead guilty could show deficient

5  performance); *see, e.g., id.* at 1387-88 (no deficient performance because client had not told the

6  attorney of the facts that might have supported a defense based on improprieties in the interrogation,

7  and no prejudice because, even if the client had been advised of the possible defense, "he would have

8  pleaded guilty anyway").  The superior court reasonably determined that attorney Parrish did not

9  engage in deficient performance in communicating to Mr. Czekus the length of the prison sentence

10  that would be imposed if he accepted the plea offer.  Mr. Czekus has never affirmatively stated that

11  his attorney actually told him his sentence would be anything less than 32 years.  An attorney's

12  "gross mischaracterization of the likely outcome" if one pleads guilty "combined with [] erroneous

13  advice on the possible effects of going to trial, falls below the level of competence required of

14  defense attorneys."  *Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986).  However, a "mere inaccurate

15  prediction, standing alone," would not amount to deficient performance in the guilty plea context.[5]

16  *Id.*; *see also Sophanthavong v. Palmateer*, 378 F.3d 859, 868 (9th Cir. 2004) (same).  Mr. Czekus

17  presents evidence that the attorney told him that accepting the plea offer would be the only way to

18  avoid receiving a life sentence.  Even if true, this does not amount to a "gross mischaracterization" of

19  the sentence because, as the state court explained, such a statement technically was true.  The

20  distinction between a 32-year sentence and a life sentence for a 70 year old contemplating whether to

21  accept a plea deal is a technical distinction probably only of interest to lawyers, but there technically

22  is a distinction.  And, as the state court pointed out, Mr. Czekus knew his age and health when he

23

24       [5] In *Iaea*, counsel urged the defendant to accept the offer because (according to counsel) the

25  defendant's chances of acquittal at trial were slight and he was subject to the state's minimum sentencing law, but there was a good chance that he would receive probation and "'almost zero'"

26  chance of an extended or life sentence if he accepted the plea offer even though the judge retained sentencing discretion.  *Id.* at 863.  The defendant then pled guilty pursuant to a plea bargain and

27  received a life sentence.  The Ninth Circuit explained that counsel had a duty to supply criminal defendants with necessary and accurate information. *Id.* at 865.  Counsel's "gross

28  mischaracterization" of the likely sentence was one of the facts that showed deficient performance in *Iaea*.

**United States District Court**
For the Northern District of California

1   entered his plea of no contest after being told that he would receive a 32-year sentence.  Counsel did

2   not grossly mischaracterize the number of years that Mr. Czekus would spend in prison.  When he

3   pled no contest, Mr. Czekus acknowledged that he understood that his sentence would be 32 years in

4   prison and that there were no side promises or threats prompting him to plead no contest.  His

5   "disappointed hope for leniency does not, without more, render a guilty plea invalid." *Conley v.*

6   *United States*, 407 F.2d 45, 47 (9th. Cir. 1969).

7          Although the trial court initially referred to the plea agreement as calling for a "prison

8   commitment of 32 years top and bottom" – a reference a lay person might not understand – the

9   prosecutor promptly described the term as the "aggravated term on each of those four counts" to be

10  run consecutive "for a total of 32 years," Docket # 17-1 at 3-4, and the court later stated, "as a result

11  of this plea you are going to be sent to prison for the 32 year period," *Id.* at 7.  Thus, notwithstanding

12  the initial "32 years top and bottom" reference that Mr. Czekus may not have understood, the actual

13  32-year term was clearly mentioned twice thereafter in the plea hearing.   When told by the judge

14  that, as a result of the plea, he was "going to be sent to prison for the 32 year period."  Mr. Czekus

15  agreed that he understood that term, and acknowledged that no other promises had been made to him.

16  Mr. Czekus also did not object or protest at the sentencing hearing when the court imposed the 32-

17  year sentence.  Mr. Czekus' declaration that he did not understand that his sentence would be set at

18  32 years and no lower is insufficient to rebut the "strong presumption of verity" afforded his solemn

19  declarations in open court, including his statement that he understood he was going to get a 32-year

20  sentence as a result of the plea.  *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) ("the

21  representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any

22  findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent

23  collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity.  The

24  subsequent presentation of conclusory allegations unsupported by specifics is subject to summary

25  dismissal, as are contentions that in the face of the record are wholly incredible.")

26         Mr. Czekus puts great weight on the fact that he and his wife paid $12,500 to hire a consultant

27  to prepare a sentencing report for the sentencing judge's consideration, arguing that they would not

28  have spent that kind of money to persuade the sentencing court if they had understood that the length

**United States District Court**
For the Northern District of California

1   of the sentence was already set in stone.  This court agrees with the superior court that,

2   notwithstanding the hiring of the sentencing consultant, Mr. Czekus did not show that he was

3   incorrectly advised or that he failed to understand that entering a plea would result in a 32-year

4   sentence.  The fact that he and his wife hired a sentencing consultant does not render unreasonable

5   the Superior Court's finding that Mr. Czekus in fact understood he was being sentenced to 32 years.

6   *See Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir 1999) (finding habeas petitioner's alleged

7   "subjective" impressions insufficient to undermine his own statements at the plea colloquy).  The

8   hiring of the sentencing consultant appears to have been the product of nothing more than wishful

9   thinking by Mr. Czekus' wife, not Mr. Czekus's understanding based on inadequate advice by his

10  attorney.  Mr. Czekus does not affirmatively state that he made the decision to hire the sentencing

11  consultant.

12          The record suggests that *Mrs.* Czekus hired the sentencing consultant and did so based on her

13  "internet research" rather than based on anything attorney Parrish had told Mr. or Mrs. Czekus.

14  *See* Docket # 20 at 30.  Mrs. Czekus' handwritten note dated October 30, 2009 (i.e., two days after

15  the entry of the plea) stated:  "I called Parrish - 1) wanted to discuss 10 days grace period (researched

16  internet) because Aba wants to w/draw no contest plea."  *Id.*  She also noted that attorney Parrish

17  angrily told her "'it's a done deal'" and there was nothing that could be done.  *Id.*  Mrs. Czekus'

18  handwritten note dated November 2, 2009 (i.e., four days after the entry of the plea), stated that she

19  called Parrish and left a message on voice mail, and "I researched presentencing rpt can be prepared

20  & filed w/in 10 days before sentencing on Dec. 15, 2009."  *Id.*  Mrs. Czekus' second note for

21  November 2, 2009 states that attorney Parrish called her back and told her, "no more presentencing,"

22  "this is [a] done deal," and "on Dec. 15, Aba will just be formally sentenced."  *Id.*  Mrs. Czekus'

23  notes indicate that she called the sentencing consultant on November 18, 2009 and had discussions

24  with him between then and December 14, 2009.  *Id.* at 31.

25          These handwritten notes undermine the argument that the hiring of the sentencing consultant

26  demonstrates that Mr. Czekus did not know that his plea included a definite 32-year sentence.  First,

27  there is no explanation of why Mr. Czekus wanted to withdraw his no-contest plea two days after

28  entering the plea.  If he wanted to withdraw it because he realized after entering the plea that he had

15

**United States District Court**
For the Northern District of California

1   received a 32-year sentence, there was no reason to thereafter hire a sentencing consultant.  Second,

2   the handwritten notes show that Mrs. Czekus hired the sentencing consultant after attorney Parrish

3   plainly told her that the plea was a "done deal" and there was no way to change it.  These notes show

4   that the hiring of a sentencing consultant was an act of desperation and probably the product of

5   misinformation from the internet – but certainly not because attorney Parrish had led Mr. or Mrs.

6   Czekus to believe that the length of the sentence was open for further debate.

7           If one looks only at the prison term, the plea deal looked like an undesirable deal from Mr.

8   Czekus' perspective because the length of the sentence meant that he would spend the rest of his life

9   in prison, just as he would if convicted of all charges.  But this sort of tunnel vision ignores a critical

10  factor: Mr. Czekus wanted to avoid the need for his granddaughter to testify and describe in court

11  how and when he sexually abused her.  Mr. Czekus told his attorney he did not want the victim to

12  have to testify.  The desire to spare a crime victim the further trauma of testifying in court is a

13  legitimate reason to plead guilty or no contest.  *See Weaver v. Palmateer*, 455 F.3d 958, 968 (9th Cir.

14  2006).  Indeed, the interest in avoiding further damage to the victim made especially good sense here

15  because the crimes were sex crimes, there were many of them, the victim was a child, and the victim

16  was Mr. Czekus' granddaughter.  There was simply no way for the granddaughter to avoid testifying

17  unless Mr. Czekus pled guilty or no contest.  Mr. Czekus has not provided any reason for his attorney

18  to doubt the sincerity of his expressed desire to avoid further harm to his granddaughter.   Although

19  Mr. Czekus argues now that there was no perceptible benefit to accepting the plea offer, this

20  argument ignores the consideration for his granddaughter that was so critical at the time he entered

21  his plea.  The superior court thus reasonably determined that Mr. Czekus entered his plea "against

22  trial counsel's advice for a specifically articulated personal reason," i.e., to spare his granddaughter

23  from testifying against him.  Docket # 17-1 at 158.

24          Given the fact that Mr. Czekus did not then and does not now claim innocence, there also

25  were other non-liberty based reasons to take the offered plea.  By pleading no contest, Mr. Czekus

26  reduced the potential further embarrassment to his family of a public trial at which his child

27  molesting would be described in great detail and his granddaughter would be subjected to the rigors

28  of cross-examination.  By pleading no contest, Mr. Czekus also avoided the financial expense of

pursuing a defense through trial.  Mr. Czekus was not indigent and had to pay for his counsel, so fees paid to counsel would diminish whatever retirement funds existed for him and his wife.  These non-liberty factors would have been motivators for a person considering whether to accept a plea bargain. In fact, it has long been recognized that a defendant's choice to plead guilty might be motivated by factors such as the shock of being arrested, the desire to avoid financial and emotional costs, and the hope for a lesser sentence.  *See Haring*, 462 U.S. at 318-19.  These facts further underscore the reasonableness of the superior court findings.

Moreover, to show prejudice, Mr. Czekus must show "a reasonable probability" that, but for counsel's errors, "he would not have pleaded guilty and would have insisted on going to trial."  *Hill v. Lockhart*, 474 U.S. at 59.  This he has not done, as the superior court reasonably determined.  Mr. Czekus never declares that he would have insisted on going to trial had he known that the sentence definitely would be 32 years; nor has he offered any evidence to show such prejudice.  *Cf. Premo v. Moore,* 562 U.S. 115, 133 (2011) (Ginsburg, J., concurring) (no prejudice was shown on claim that counsel was ineffective in advising client to accept plea bargain because the client "never declared that, better informed, he would have resisted the plea bargain and opted for trial").

Given his concern about forcing his granddaughter to testify, it is unlikely that Mr. Czekus would have opted to go to trial.  Further, there was no prejudice because, regardless of the clarity of the information he received from counsel about the length of his sentence, the state court's plea canvass alerted Mr. Czekus to the fact that he would – not merely could – receive a 32-year sentence and he then pled no contest.  *See Womack v. Del Papa*, 497 F.3d 998, 1003 (9th Cir. 2007) (regardless of whether counsel erroneously predicted that defendant might receive a sentence that permitted parole in 30 to 40 years instead of the life-without-parole sentence that defendant eventually received, no prejudice was shown "because the plea agreement and the state district court's plea canvass alerted Womack to the potential consequences of his guilty plea," including a statement by the judge that he could be sentenced to life without parole).  Mr. Czekus' ineffective assistance of counsel claim fails on both prongs of the *Strickland* test.

C.      A Certificate Of Appealability Will Not Issue

        Mr. Czekus has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and this is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Accordingly, a certificate of appealability is **DENIED**.

## VI.   CONCLUSION

        The petition for writ of habeas corpus is **DENIED** on the merits.  The Clerk shall close the file.


        IT IS SO ORDERED.


Dated: September 30, 2015

_____
EDWARD M. CHEN
United States District Judge